Freeman, J.,
delivered the opinion of the Court.
The declaration in this case contains two counts: one in trover, the other for money had and received *709 by the defendants to the plaintiffs’ use. The pleas are not guilty, as to the count in trover; and, not indebted, as to the other count. The facts are briefly these:
The plaintiffs, Turk & Hawkins, lived in Tunica county, Mississippi, and were, in the year 1869, engaged in farming. Turk, being sick at the time, sent three bales of cotton by one Samuel Smith, to Commerce Landing, on' the Mississippi river, to be shipped to the defendants, A. J. Roach & Co., who were his commission merchants in the City of Memphis, and to whom he owed about $100. Turk gave Smith the card of A. J. Eoach & .Co., telling him to give it to a Mr. Mosely, who was the shipping agent at Commerce, and tell him that he had sent the cotton, and wanted it shipped to A. J. Eoach & Co. The cotton was marked A. T., but belonged to Turk & Hawkins. One J. W. Ware was at the time the clerk of Mosely, and attending to all the shipping business for him when absent. Mosely was absent when the cotton arrived, and Smith delivered it to Ware, with the card and directions of Turk. Ware, instead of shipping the cotton as directed, sent it in his own name to A. J. Roach & Co., accompanied by the following letter:
A. J. Eoach & Co.
“ Gentlemen: — I ship you three bales of cotton per steamer Les Arc to-day, which you will please bold until further orders, and oblige
Yours truly,
J. W. Ware.”
*710 In obedience to these instructions, the defendants, received the cotton, on presenting a bill of lading which had been forwarded them, showing its shipment .by Ware from Commerce. A few days after the cotton was received by Roach & Co., a man called at their place of business, claiming to be J. W. Ware, and asked if they had received the cotton, and the letter above cited: — upon being answered in the affirmative, he directed them to sell it and pay him the proceeds. Thereupon, Roach & Co. sold the cotton, but refused to pay the proceeds to Ware unless he proved to them that he was the author of the above letter. Ware then brought 'a Mr. Voorhies, a gentleman well known in Memphis, who identified him as the J. W. Ware he represented himself to be, and the money was paid to him. It is shown that the firm had no acquaintance with Ware, but knew from hearsay that such a man lived at Commerce Landing, and was connected with the shipping business. Ware soon after this, absconded. Turk a short time after-wards went to Memphis, called on Roach & Co.,, inquired for his cotton, and found that the. firm knew nothing of any cotton having been shipped to them by him — but ascertained the facts as above stated. Turk thereupon demanded the proceeds of the cotton from Roach & Co., which was refused, when this suit was brought. The Judge in the Court below instructed the jury substantially, that the plaintiffs were entitled to recover on the above facts, and a verdict was accordingly rendered, from which the plaintiffs have appealed. The question is, Whether on these- *711 facts the verdict was proper? There can be no doubt that the instructions are sustained by the case of Taylor, Cole & McLeod v. Pope, 5 Col., 413, and we are called upon to review that decision. In that case, Pope, a planter in Mississippi, employed Armstrong to take charge of his cotton and deliver it to Meacham & Galbraith at Memphis. Armstrong took the cotton to Memphis, and in violation of his duty put it into the possession of Taylor, Cole & McLeod, and employed them to sell it on his account; representing to them, that he was the owner. Taylor, Cole & McLeod, without notice that the cotton was not his, sold it and paid the money over to-Armstrong, who absconded with it. Pope thereupon-brought an action in trover against Taylor, Cole & McLeod, and recovered; and this verdict was held to-be correct. The rule is settled, that a party- can convey no more title than he possesses, to personal property of this character. The delivery of the cotton to Armstrong for the purpose of being placed in the hands of Meacham & Galbraith, did not authorize its-delivery to other parties; and he had no authority to convey a title to any one, however innocent that party might be. We think the question in that case was not one of title to the cotton; but, Whether the parties were guilty of a conversion of a trust, and therefore liable to Pope.
It may be conceded in the present ease, that the plaintiffs were entitled to recover the cotton from Roach & Co., on demand and a refusal to deliver. It would seem very doubtful, however, whether they could *712 sustain an action of trover, without demand and a refusal to deliver, on the part of Roach & Co., even though the cotton had been in their possession at the time the suit commenced; as that firm had come into the possession of the cotton innocently . through the plaintiff’s agent, to whose care it had been committed. It may also be conceded that, after the sale of the cotton, and before the money was paid over and had passed from the hands of Roach & Co., upon demaudyand refusal, the plaintiffs could have recovered. But Roach & Co. did not have the possession and control of the plaintiffs’ cotton, nor of its proceeds, at the time of the demand. It is evident then, that if the plaintiffs recover in this case, it must be for a conversion of the cotton by parties who had no knowledge of their title or claim, and who never for a moment claimed adversely to their rights. It is equally clear, that we must force upon the defendants the position of antagonism to the rights of the plaintiffs, contrary to the facts of the case, and assume that they are guilty of a tortious conversion: when it is evident that had they known of the plaintiffs’ title they would, most readily, have yielded to it. Can such a liability be based oh sound principle? We think not. The principal case on which the opinion in 5th Coldwell rests, or the case cited as illustrating the rule, is Saltus v. Everett, 20 Wend., 268. The facts of that case, as given by Judge Smith, are, that Bridge & Vose shipped a quantity of lead from New Orleans to New York by the brig Dove, of which Collins was master, consigned to Tafts, Everett & Bar *713 rett, New York, on account of Everett. The Dove put into Norfolk in distress, and Collins re-shipped the lead upon the schooner Dusty Miller, taking from the master a bill of lading, in which Collins was named as consignee. Upon the arrival of the lead in New York, Collins ordered it to be delivered to Coffin & Cartwright, who afterwards sold it to Saltus. Neither Coffin & Cartwright nor Saltus, to whom it was sold, had any notice of Everett’s title. Everett demanded the lead from Saltus, who refused t¿ deliver it, and thereupon Everett sued Saltus in trover, and gained a verdict. This verdict was sustained in the N. Y. Court of Errors, and, we concede, properly sustained on the authorities cited: Lickbarrow v. Mason, vol. 1, part 2, of Smith’s Leading Cases, 1089, et seq. But does that case support the conclusion the Court reached in the case in 5th Coldwell, or the one now before us? We think not. A demand for the lead was made upon Saltus, who claimed it as his own, as purchaser; and thus set up an adverse right to it as against the true owner, Everett. This might well warrant the Court in holding that he was guilty of a conversion. It was the assertion of an adverse clairn^ to that of the true owner. It is true he had sold the lead; but, as a matter of course, having sold it as his own, he held the proceeds when the demand was . made: — and the demand, as shown in the statement of the case, was for the “ delivery of the lead or its proceeds.” The reasoning of the Court is based on the simple question of the claim of the title on the part of Everett, the original consignee and owner, and *714 the purchaser, Saltus, asserting an adverse title under his purchase from Coffin & Cartwright, the agents of Collins,, the master. An action for a conversion may well be sustained against a party who has obtained possession of another’s property and refuses to deliver it: or has sold it, put the money in his pocket, and refuses to account for its proceeds. So also the unreported case referred to by Judge Smith, of Hull v. Walker, was a case where Goodman & Means, to whom the cotton of Hull had been sent for storage only, had sold it to Walker., Hull brought suit against Walker, the purchaser, for a conversion, and recovered. We yield our assent to. these decisions; but we think the distinction between them, the 5th Coldwe'll case, and the case in hand, is broad, clear, and well defined. The material fact in which the two cases referred to differ from the one in hand is, that both were cases against the purchaser: neither against a factor after payment of the money to his consignor with no notice of title. Here the parties sued are not the purchasers of the property from one having no authority to sell or having no title- himself, and therefore unable to convey any to his vendee: but innocent agents or factors who have simply received the cotton in the regular course of their business, sold it as agents for one who had consigned it to them, and paid over the proceeds to him. They had no knowledge of . the plaintiffs’ title to the cotton. They have acted with prudence and circumspection, and have been guilty of no negligence. They not only had no knowledge of the plaintiffs’ title, but no means by which to ascertain that such *715 title existed; for the cotton had nothing about it to indicate certainly from whom Ware had received it: much less was there any thing in the facts to give the slightest notice of his fraudulent conduct or put the defendants on inquiry as to his title. It is clear that if these defendants had known the facts, they would not only have refused to claim adversely to the plaintiffs’ title, but would cheerfully have acknowledged and recognized it. Both their interest and duty would have prompted such recognition. They did not hold or at- any time claim an adverse right to the plaintiffs. It was impossible they could have done so; because they had no knowledge of the existence of such a right. Can it then be fairly maintained that they stand in the same position as a purchaser of the cotton would occupy, who had it in possession and refused to deliver it to the plaintiffs, after learning the facts of their title, and. how by Ware’s fraud their agent had lost possession of it? Or would they stand in the position of a purchaser who had sold the cotton and had its- proceeds? We think not. The case of the purchaser is the assertion of an adverse claim to the right of the true owner — , while the case at bar lacks that element entirely: and such an attitude can only be forced upon these defendants arbitrarily, and contrary to the facts. The action is trover and necessarily involves the idea of a tort, of a wrong done to the plaintiffs’ right, and against it. Greenleaf, in vol. 2d, sec. 642, defines a “ conversion in the sense of the law of trover,” to consist “ either in the appropriation of the thing to the party’s own *716 use ana beneficial enjoyment, or in its destruction, or in exercising dominion over it in exclusion or defiance of the plaintiff’s right, or withholding the possession from the plaintiff under a claim of title inconsistent with his own.” 2 N. Y., 293; 8 John, 445; 15 John, 430; 20 L. & Eq., 451; 1 N. Y., 523. Again, in sec. 642: “ A mere purchase of goods in good faith from one who has no right to sell them, is not a conversion of them, against the lawful owner until his title has been made known and resisted.” McCombic v. Davis, 6 East, 538; Baldwin v. Cole, 6 Mod., 212. The case in East is very much like the present, and sustains the position of the liability of a party who has obtained goods of a principal from an unauthorized agent, and makes him liable for a conversion; but requires a withholding of possession by the purchaser or pledgee, after demand and a knowledge of the principal’s title. It is clear, beyond question, that there can be no conversion in a case like this, without an adverse holding, or claim as •against the title of the true owner — which necessarily involves a knowledge of such title — and until such knowledge is fixed on the party in possession, or who has been in the possession of the property, he can not, in the language of Mr. Greenleaf, be said to “exercise dominion over it in exclusion or in defiance of the plaintiff’s right, or to withhold the possession from the plaintiff under a claim of title inconsistent with the title of the true owner.” When the circumstances do not of themselves amount to an actual conversion, a demand and refusal before commencement of the *717 suit must be proven; and the refusal, says Mr. Green-leaf, “must be absolute, amounting to a denial of the plaintiff’s title to the possession.” 2d vol., sec. 644.
We know it is sometimes loosely said in cases, that any unauthorized act of dominion over the property of another is a conversion: but on looking into the facts of these eases it will be found that it was always meant that such unauthorized dominion or control had in it the element of an assertion of adverse right or claim, to that of the true owner; and without this, there can be, on sound principle, no conversion. Upon this reasoning, and the authorities we\ have cited, it is clear, that while the agent, Ware, had no power to sell or convey the title to the cotton, and could communicate none to the defendants, Roach & Co.; and while the cotton, in the hands of Roach & Co. or their vendees, might be recovered by the plaintiffs': yet, we hold that the mere act of selling the cotton as factors, with no knowledge of the plaintiffs’ title, could j not make Roach & Co. liable for a conversion. We/ can not admit the correctness of the deduction — in the 5th Coldwell case — drawn from cases holding, that the agent, not having power to sell, can communicate no title to a vendee; and that it therefore follows that an innocent factor, — with no knowledge of the agent’s violation of his trust, — who in the exercise of ordinary prudence and caution sells the property placed in his hands, by one who has possesion of it, and therefore a prima facie title to it, is guilty of a conversion and liable in trover to the true owner, nothing more appearing. We hold, that in order to make the factor *718 liable, a demand must be made, while the properly or its proceeds is in his hands; or notice of the owner’s title, or the want of title on the part of the party placing it in his hands, must be brought home to him; and thus fix upon him a wrongful assertion of dominion and control .over another’s property, and in defiance of his right. We, therefore, overrule the opinion of the Court in the case of Taylor, Cole & McLeod v. Pope, in 5 Cold., as unsound in principle and un-sustained by authority. We think the principle we have adopted in this opinion will reach the justice of such cases. The factor, in a case like the one before us, has no knowledge of the title of the plaintiffs; nor has he the means of knowledge. He lias no means of knowing from whom the party who sends the cotton to him has obtained it. It has nothing about it, by which its former owner can be traced. He ought not to be required to examine and verify the title of all the cotton or other produce shipped to him for sale. This would burden trade too heavily. On the contrary, the owner who ships his cotton to a commission merchant chooses his own agent for such shipment, and in this age of rapid communication can, either by mail or telegraph, at all times inform the factor of the shipment: — and thus, with little trouble “ and expense, protect himself from danger. Having the means of protection in his own hands, if he fail to use them, it is his own fault. He has full remedy for any wrong done him, by suit against his fraudulent agent, or against any purchaser in whose hands he may find his property, or its proceeds; and he *719 should not be permitted to hold liable an innocent factor, who has neither his goods nor their proceeds in his possession.
The case will be reversed, and remanded for a new trial.